THE SOUTHERN KANSAS RAILWAY COMPANY v. WILLIAM T. GRIFFITH.

1. NEGLIGENCE — *Pleading and Proof.*   In an action against a railway company by one of its employés to recover damages for injuries occasioned by the negligence of the defendant or its servants, the negligence proven at the trial and found by the jury as a basis for a general verdict in favor of the plaintiff must correspond with the averments of the petition.

2. INJURY TO EMPLOYÉ — *Excavation in Railroad Yard — Negligence — Finding — Variance — New Trial.*   The plaintiff was a switchman in the yard of the defendant at Cherry Vale.   While employed in switching cars, he jumped from a car to the ground, at a place where repairs were being made in the track, caught his foot on a projecting tie which was being placed in the track, fell, and his arm was run over and crushed by the wheels.   The petition alleges that the defendant was negligent "in causing and allowing said excavations to be made, and said excavated dirt to be placed upon the ground near said track, and in allowing said cross-ties to project and extend beyond and above said track, and in not placing and maintaining danger signals at points proper to indicate the place, or places where such excavations and obstructions were, and in requiring and ordering services of this plaintiff at such time and in such place, and without any negligence on the part of this plaintiff."   The jury

found, in answer to a special question, that the negligence of the defendant was "in failing to notify yard master of'the repairs that were then being made in their yard." *Held*, That the negligence found by the jury does not correspond with that charged in the petition, and that a new trial must be awarded because of the variance.

### Error from Douglas District Court.

THE plaintiff was employed as a switchman in the yard of the defendant company at Cherry Vale. While so employed, he was injured by having his arm run over and crushed. This action was brought to recover damages therefor. The averments of the.petition charging negligence are as follows:

"Said plaintiff further says, that on or about the 17th day of May, 1887, this plaintiff was in the employ of the said defendant as a yard man in the railroad yard of the said defendant at said city of Cherry Vale, and was then and there engaged and employed in and about the switching of cars and making up the trains of said defendant, under the direction of the yard master, who had the control and supervision of said yard and the trains therein for the said defendant, and who had authority from the said defendant over this plaintiff and other like employés of said defendant; that the said railroad company, by its section foreman, its employé and agent for that purpose, and duly authorized and instructed, wrongfully, negligently, and in an unusual manner, excavated and removed the dirt from between a large number of the crossties in its railroad track in said yard, and made excavations upon and alongside of its said track, and carelessly and negligently caused the excavated dirt to be placed upon the ground near said track and excavation, and carelessly and negligently caused and permitted a cross-tie to project beyond and above the said track and the usual surface thereof at the place where this defendant was then so employed and at work as aforesaid, and carelessly and negligently failed to place danger signals at proper points to indicate the place or places where such excavations and obstructions were; and, while this plaintiff was so employed as aforesaid, he was ordered and directed by the said yard master to pull one of the coupling pins connecting the cars and cut off two cars from a moving train of the said defendant in the railroad yard aforesaid, at and near the place where the aforesaid excavations and obstructions on said track then were.

"This plaintiff, in the ordinary and proper discharge of said order, was standing on the brake beam of one of the cars thus to be cut off, and between two of the cars of the said moving train, as he was under the necessity of doing for the purpose of obeying said order, and from said position was unable to see or know what the condition of said track was at all points; and from said position, and while so occupied in and about his duty, was unable to see the excavations and obstructions aforesaid, and did not and could not know how near he was thereto; that in the discharge of his said duty, and in obeying the said order of said yard master, it became necessary for him, the plaintiff, after he had pulled the coupling pin and cut off the cars aforesaid, to jump from the said moving train to the ground at the side of the railroad track, and give a signal to the engineer in charge of the locomotive engine of said train; that on receiving said order, and without negligence on the part of this plaintiff, he, the said plaintiff, pulled the coupling pin and jumped from the said train in order to give the said signal; and then and there, by and in consequence of the carelessness and negligence of the defendant in causing and allowing said excavations to be made and said excavated dirt to be placed upon the ground near said track, and in allowing said cross-tie to project and extend beyond and above said track, and in not placing and maintaining danger signals at points proper to indicate the place or places where such excavations and obstructions were, and by the negligence, carelessness and improper conduct of the defendant, its servants and agents, in requiring and ordering services of this plaintiff at such time and in such place, and without any negligence on the part of this plaintiff, the plaintiff was caught and tripped by said projecting cross-tie and said piles of earth and said excavations, and was thrown under and beneath the cars of its said train and was run over by said cars, and his left arm was mangled and lacerated by reason thereof, so that its amputation became and was necessary, and he was otherwise greatly hurt, bruised, and injured, and remained for a long time sick, suffering great pain, and disabled, and was confined to his room thereby for a long time, to wit, for the space of three months, and was thereby deprived of great gains which he might otherwise have made; and that, by reason of such injuries, he has been permanently maimed, crippled, and injured in strength and health, so as not to be able to be engaged in any employment requiring his former strength."

The jury found a general verdict for the plaintiff for $5,000, and also returned answers to special questions asked by the plaintiff, as follows;

"1. Was the plaintiff, William T. Griffith, guilty of any negligence which contributed to the injury of which he complains in his petition and answer? Ans. No.

"2. Was the defendant guilty of any negligence at the time of the accident to the plaintiff stated in his petition, which was the proximate cause of the injury received by the plaintiff stated in his petition? A. Yes.

"3. If you answer 'yes,' state what that negligence was. A. In failing to notify yard master of the repairs that were then being made in their yard. ·

"4. Had the plaintiff, at the time he met with the accident stated in his petition, any personal knowledge of the disturbed condition of the track of the defendant's railroad at the point where the injury occurred? A. No.

"5. Was the plaintiff guilty of any negligence in performing the duty which he was attempting to perform at the time he received the injury complained of? A. No."

And also the following questions submitted by the defendant:

"1. Did the plaintiff see the condition of the ground just before he jumped from the cars at the place where he suffered the injury complained of? A. No.

"2. Could he have seen the condition of the ground at that place before he jumped from the cars, if he had looked? A. No.

"3. If you answer the last question in the negative, then state what there was to prevent him from seeing the condition at that place. A. The box car in front of him.

"4. Did the plaintiff look to see where he was jumping or where he would alight, before he jumped, at the place where he was injured? A. Yes, in a general way, as one naturally would at such times and places.

"5. When did the section force begin the work of replacing ties under the main track from the switch, with reference to the time the plaintiff was injured, and at what time in the day did they begin work? A. Some time in the afternoon of the day previous to the accident.

"6. Did not the section force continue the work of replac-

ing ties there from the time they began until the time plaintiff was injured? A. Yes, during working hours.

"7. Was not the repairing which was done at that time and place by the section force necessary to be done? A. Yes.

"8. Was not the work of replacing the ties there done and performed in the usual manner of performing such work? A. Yes, in that yard."

"10. Did not the plaintiff have knowledge that this work was being done there by the section force before he was injured? A. No.

"11. Was not the plaintiff, before his injury, in a condition to have seen and known that the work of repairing was being done there? A. We believe not.

"12. Was not the plaintiff at or near the place where the work of repairing by the section force was being done before he went to uncouple the cars from which he jumped and was injured? A. Not till he ran to throw the switch.

"13. If you find that the plaintiff was negligent, and that such negligence was the proximate cause of the plaintiff's injury, then state the particular act of negligence that caused the injury? A. We find no negligence upon his part.

"14. Would it not have been ordinary care for the plaintiff to have looked to see where he would alight, and the condition of the ground there, before jumping from the train? A. Yes.

"15. Ought not a careful and prudent man, situated as the plaintiff was on the cars, moving at the rate of from three to four miles an hour, to have looked to see where he would alight before jumping from the train? A. Yes."

A motion for a new trial was duly made and overruled, and judgment entered on the verdict. The defendant brings the case here, alleging errors.

*A. A. Hurd, Robert Dunlap,* and *W. Littlefield,* for plaintiff in error.

*Riggs & Nevison,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: A single question only needs to be considered, as that, in the opinion of a majority of the court, is decisive of the case. Is the specific negligence found by the jury

sufficiently charged in the petition to warrant a judgment in favor of the plaintiff because of it? The jury, in answer to the third question submitted by the plaintiff, say that the negligence of the defendant was "in failing ·to notify yard master of the repairs that were then being made in their yard." There is no direct averment in the petition that it was the duty of the company, or any of its employés, to notify the yard master of the repairs being made, nor is there any averment that the defendant, or any of its employés, failed to notify the yard master of such repairs. The plaintiff was employed as a switchman in the railroad yards at Cherry Vale, and worked under the direction of the yard master.

The evidence shows that a gang of hands working under the section foreman commenced repairing the track in front of the depot platform in the afternoon before the accident occurred, by taking out old cross-ties and putting in new ones. The workmen commenced their work at the switch. At the time of the accident they were working about 40 feet from the head block, and had removed the dirt from between several of the ties, and one long, new tie was placed partly under the track, leaving one end projecting and raised above the surface of the ground. The plaintiff got upon the brake beam of a moving car, for the purpose of uncoupling it, and in jumping off on to the ground for the purpose of giving a signal to the engineer, he caught his foot on the projecting tie, stumbled, and, as he says, stepped forward into a hole, and the car hit him and knocked him into a hole where they had taken a tie out. He fell with his left arm across the rail, and the car wheels ran over it and cut it off. The plaintiff's brother, who was yard master in charge of switching operations, testified that he had no knowledge or notice that repairs were being made by the section foreman and men working under him. No signal flags indicating that repairs were being made were placed along the track. The evidence shows that it was not customary in that yard to use such signal flags to indicate where repairs were being made in the

28—54 KAS.

track.    The plaintiff testified that he had no knowledge that such repairs were being made. .

It appears that, shortly before the injury, the plaintiff had thrown the switch near where the repairs were being made, but he testifies that he did not see the men at work, and did not know they were there.    On the part of the defendant, there was testimony tending to show that the plaintiff had passed over that part of the track where the section men were at work, in full view of them.    This, however, was denied by. the plaintiff and yard master.    The particular negligence attributed to the defendant was in failing to warn the men engaged in switching of the disturbed condition of the track. While it is claimed by the plaintiff that the manner of making the repairs was improper, in that more ties were removed at a time than was necessary or proper in making repairs in a yard where engines and cars were frequently passing, the jury do not seem to have found that there was any negligence in that respect.    The culpability of the defendant, if any, rests, then, entirely on the facts that the company proceeded through its section force to dig away the dirt and place new ties in such manner as to change and disturb the surface of the ground in the yard where the plaintiff was accustomed to work, without giving him any notice thereof.

The specific charge in the petition is, that no signal flags were placed to warn him of danger.    There is no claim by either party that signal flags were, in fact, put out.    The petition does not specifically charge, either that it was the duty of the company or of the section foreman to notify the yard master of the intended repairs, nor that no such notice was given.    The jury, however, find that the negligence of the defendant consisted in the failure to give such notice.    The majority of the court think this a variance compelling a reversal of the judgment; that the proof and findings must correspond with the pleadings, and that the allegation of negligence in one particular does not warrant a recovery on proof of negligence in another and different matter.    The view of the writer is, that the variance is not such as com-

pels a reversal of the judgment. While it is true that the petition charges that no signal flags were put out to indicate that repairs were being made, the finding of the jury seems to be more comprehensive than the averment of the petition. The only object of placing out flags would be merely to give notice to the yard master, those under him, and other trainmen, of the repairs. It is undisputed that notice was not given in that manner. The jury have gone farther, and found that no notice at all was given to the yard master, and that the failure to give it was negligence. Besides, the general averments of the petition with reference to the manner of making the repairs and the requirement of service from the plaintiff when the track was in a dangerous condition, seem to me sufficient to uphold the verdict of the jury.

There is nothing in the special findings directly negativing negligence in other respects, and it seems a rather strained construction to hold that the third finding asked by the plaintiff is, in effect, a finding in favor of the defendant on every other issue as to negligence. The general rule is, that the special findings and general verdict are to be harmonized wherever it can fairly be done. I think the issues in this case have been fairly tried; that the evidence sustains the verdict, and that there is nothing in the special findings necessarily inconsistent with the pleadings or the general verdict; but the majority of the court hold otherwise, and the judgment is therefore reversed, and a new trial ordered.

HORTON, C. J., and JOHNSTON, J., concurring.

ALLEN, J., dissenting.